## Southern-Harlan Coal Company v. Gallaier.

(Decided May 8, 1931.)

WILLIAM SAMPSON and T. E. MAHAN for appellant.

G. G. RAWLINGS for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER.—
Reversing.

Lum Gallaier was a miner in the service of the Southern-Harlan Coal Company and was painfully injured by a fall of slate from the roof of the mine. He brought this action to recover for his injury, and a verdict and judgment having been rendered in his favor for $6,000, the coal company appeals.

The facts are these: The coal in the rooms had been gotten out and they were taking out the pillars. The rooms in question are Nos. 41 and 43. The entries are driven 400 feet apart, and off of these entries they drive rooms. When they first cut from an entry to form a room, they drive what is called a room neck 10 or 12 feet wide and then the room is widened 40 feet. At the end of the room neck, 40 or 50 feet from the entry, they cut a break-through by taking out a narrow strip of coal 12 to 14 feet wide, parallel with the entry and running to the next room. This break-through is used for air ventilating and other purposes. The block of coal that is formed by the entry, the two room necks, and the crosscut is called a "stump." The room is driven 200 feet from each entry until the two rooms meet. After the rooms meet there is left between them a solid block of coal 20 feet wide. This is called a "pillar." After the rooms have been driven together, the pillar is again cut through, halfway between the two entries, and the coal in each pillar is later taken out in the same way and over the same track that the coal was removed from the room. Rooms 41 and 43 were adjacent on the left entry.

The plaintiff Gallaier and his buddy, Everett Young, were employed to cut the pillar between 41 and 43 and pull back the pillar, but there was some water at the place where they were cutting the pillar and they were temporarily moved to the front of the pillar to work. They were working on what was called the night shift, but they went to work about 1 o'clock in the afternoon. They were loading cars from the pillar; had loaded three cars, and were loading the fourth when a large piece of slate about 3 inches thick fell from the roof at the front end of the pillar just where Gallaier was loading a car. Part of the slate fell on the car, and this possibly saved Gallaier's life. But enough of it struck him to injure him very seriously. Gallaier testified in substance to

these facts: He worked under Henry Moore from whom he received his orders. Moore said he wanted to slab the pillar so he could pull the track over there closer to the coal; then he meant to lay the track through the breakthrough; his intention was to pull the track over at the upper end of the pillar. Gallaier was taking up the coal off the bottom, which had been left there by the machine. He had not touched the coal on the pillar. He was then loading loose coal on a car. Moore examined the top and saw that the top was loose and he pulled at it. There was a big crack in the top, about a foot and a half from the face of the coal. He told Moore that this was dangerous, Moore said to go ahead and clean up the coal for the track to go through this place; that he would lay the track the next day the mine run; that he would take care of the slate. Moore had been gone only a few minutes and there was a big noise, a popping in the coal, and the rock fell upon him while he was working there as Moore had directed him to do. Gallaier before the accident was a stout, able-bodied, healthy man, making about $3 a day. He was about thirty-eight years old. Since the accident, according to the proof for him, he has been unable to do any kind of work by reason of a permanent injury of his spine from the rock falling on him.

On the other hand, the defendant proved by Everett Young, who was working with Gallaier, and also by Henry Moore, that Moore when he could not pull the rock down with a pick told Gallaier to timber it. There were timbers near by, but Gallaier did not put any timbers under the rock. Moore told Gallaier to put a post under there and went on. The rock came from right over the coal where he was working. He was cutting into the side of the pillar and taking the coal out from under the rock, and this caused the rock to fall. The defendant also introduced proof tending to show that Gallaier's injuries were not permanent and that in time he would be much better. On this proof the court gave the jury instructions which were practically the same as the instructions given in West Kentucky Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S. W. (2d) 479, 482. Appellant complains of the instructions because the court told the jury as a matter of law by instruction No. 1 that it was the duty of the company to furnish the decedent a

reasonably safe place in which to perform his labor, and that this instruction was erroneous in view of proof for the defendant that it was the duty of the decedent to put timbers under the slate before he did his work, and that under this proof it was not the duty of the defendant to furnish him a safe place to work. The appellant insists that by instruction No. 1 the jury were misled, in that the jury were told absolutely that it was the duty of the defendant to use ordinary care to furnish a reasonably safe place for the decedent to work in. The same objection was made to the instructions in the case referred to. In that case the judgment was reversed for other reasons, and the court added these words, "but on another trial the correction suggested should be made in the first instruction." On another trial in instruction No. 1 the court will insert these words at the beginning of that instruction, "Unless the jury find as set out in No. 3."

The bill of exceptions contains the following:

"It is further agreed as a part of this record that the attorney for the plaintiff in his argument before the jury referred to the absence of Mr. Arthur Ellison, official of the defendant company, who had attended the trial of this case but left the court room during the argument of the case and with reference thereto said: 'I don't blame Mr. Ellison for leaving. You know he is teaching a Sunday School class down here and he did not have the nerve to face this jury or to argue this case and ask you to find verdict in favor of this company, but he left his cold-blooded, mercenary lawyers here to do his bidding.

"It is further agreed that during the argument of counsel for plaintiff, the said counsel for plaintiff was arguing matters entirely outside of the record; the attorneys for the defendant interposed an objection to such argument, which was sustained by the court, but after the ruling of the court sustaining said objection, counsel for plaintiff said: 'I expect you to object. I knew you would object. A dog always hollers when he is hit.' To which statement of counsel for the plaintiff the attorneys for the defendant objected, which objection was overruled by the court.

"It is further stipulated and agreed herein, that in the closing argument that counsel for the plaintiff said in a broken voice and with tears in his eyes: 'Go out here and write a verdict against this cold-blooded mercenary corporation that has butchered up this man while up there hogging coal out, and this company running its mine without supervision, just turning the work over to two independent contractors who didn't care what happened to the men, just so they got the coal hogged out. Remember, ladies and gentlemen, when you do write a verdict that you might sometimes have a son who is badly crippled or killed by one of these cold-blooded, mercenary coal companies. Write your verdict for an amount commensuate with this man's injury and don't throw him out here on the hands of charity."

"To all of which foregoing statements of the attorney for plaintiff the attorneys for the defendant objected to the making thereof, the objections being overruled by the court the defendant excepts."

In Sparks v. Maeschal, 217 Ky. 242, 289 S. W. 308, 311, the court held this: "In final argument to the jury, the plaintiff's attorneys, L. L. Walker, said this:

" 'I feel the weight of the responsibility that rests upon me in presenting the case of this poor little boy against this rich and powerful corporation.' The corporation's objection to this argument should have been sustained. It was gross misconduct in the attorney to rely upon the facts that the defendant was a rich and powerful corporation. The rich and poor stand alike before the law. The corporation is entitled to have its cases tried just as the cases of individuals are tried, and there should be no effort to create prejudice against the defendant by the fact that it is a corporation." To the same effect, see I. C. R. R. Co. v. Proctor, 122 Ky. 92, 89 S. W. 714, 28 Ky. Law Rep. 598; L. & N. R. Co. v. Payne, 138 Ky. 274, 127 S. W. 993, Ann. Cas. 1912A, 1291; Knights of Maccabees v. Shields, 162 Ky. 394, 172 S. W. 696; Carter Coal Co. v. Hill, 166 Ky. 213, 179 S. W. 2; Gunterman v. Cleaver, 204 Ky. 62, 263 S. W. 683, and cases cited.

A case should be tried by the jury under the law and the evidence. No attempt should be made to prejudice the jury by the fact that the defendant is a corporation. A corporation is entitled to have its case tried just as the case of an individual. No effort should be made to enlist the sympathies of the jury for the plaintiff because he is poor. The case should be tried on its merits without reference to the wealth or poverty of the parties. It was manifestly improper to urge the jury to so find their verdict as not to throw the plaintiff "on the hands of charity." It was manifestly improper to ask them to write a verdict such as they would think right if they had a son who was badly crippled or killed by a coal company. There was nothing in the record warranting the abuse of the company as cold-blooded and mercenary, or so warranting what was said about the attorneys representing the coal company. It was improper to ask the jury to write a verdict "against this cold-blooded, mercenary corporation that has butchered up this man while up there hogging coal out and this company running its mine out without supervision." The plaintiff testified that he saw the crack in the roof and called Miller's attention to it and knew it was dangerous. Miller said he told the plaintiff to put posts under it. Gallaier said he told him he would fix it. This was the issue in the case and the only issue. The fact that there was nobody there but Miller is entirely immaterial. The court should have sustained the defendant's objections to the above-quoted argument, which was clearly very prejudicial to the defendant.

In view of all the facts shown, the unqualified duty placed on the defendant by instruction No. 1, and the above argument of counsel, the court is clearly of the opinion that a new trial should be granted. All other questions are reserved. As the defendant had elected not to operate under the Workmen's Compensation Act (Ky. Stat., sec. 4880 et seq.), contributory negligence or assumed risk cannot be relied on as a defense. Gatliff Coal Co. v. Powers, 219 Ky. 839, 294 S. W. 472.

Judgment reversed, and cause remanded for a new trial.