John STANLEY, Appellant,

v.

Joe ELLEGOOD, who sues by his next friend, Mildred Ellegood, Appellee.

Court of Appeals of Kentucky.

May 15, 1964.

Rehearing Denied Oct. 30, 1964.

Edward J. Hogan, Joe H. Taylor, Henry V. B. Denzer, John L. Bennett, Louisville, for appellant.

James F. Thomas, Thomas & Thomas, New Castle, for appellee.

A. MURRAY BEARD, Special Commissioner.

Joe Ellegood, four days prior to his 14th birthday, was seriously injured while riding as a guest passenger in the car of John Stanley, a neighbor and friend 29 years of age. Two other passengers, Eddie Willis and Ronnie Chilton, a young soldier, were in the car. No explanation was given as to the cause of the accident. The three passenger occupants, the only witnesses to the accident, could not state why it happened, and John Stanley, the driver, who also was seriously injured, did not remember anything about it. The jury gave a verdict of $22,129.80 for Joe Ellegood and a judgment was duly rendered by the lower court. This is an appeal from that judgment.

Appellant contends that he was entitled to a directed verdict or a judgment n. o. v. because:

1. "Appellee, in his pre-trial deposition, judicially admitted that he voluntarily entered the appellant's automobile knowing appellant was under the influence of intoxicants, or 'half drunk' and the appellee was, therefore, contributorily negligent as a matter of law."

2. "The appellee's attorney's closing argument was highly prejudicial since he repeatedly over appellant's objections and motions to discharge the jury, which were overruled, invoked classic examples of the 'Golden Rule' argument, which this Court has repeatedly condemned."

The four parties involved in the accident which is the subject of this action met in a parking lot in Campbellsburg and were going to the Go-Cart races at Vevay, Indiana. Appellant, John Stanley, was driving his own car and the others were riding with him. The accident occurred about five or six miles from the parking lot. The road was curving, and the car for some unexplained reason left the road on a curve and struck a bridge.

The appellee stated in a pre-trial deposition that in the parking lot and prior to the time he entered appellant's car, appellant appeared to be under the influence of intoxicants and while in this condition took another drink of whiskey. He further stated that appellant continued to act as if he were under the influence of intoxicants throughout the ride and at times exceeded the speed limit on a curving road. The substance of appellee's testimony regarding intoxication was as follows:

Q. "When you met him in Campbellsburg did he appear to be under the influence of intoxicants?"

A. "He was just acting like it. I didn't know whether he was or not."

Q. "He acted as though he were, is that right?"

A. "Yes sir."

Q. "Describe how he acted that caused you to think he was under the influence of alcohol?"

A. "He was just—you know how funny they are and everything. He acted funny and talking like he was about half drunk."

Q. "And that was when you met him in the parking lot?"

A. "Yes sir."

Q. "And then after you observed him in that condition he had still another drink, is that right?"

A. "Yes sir."

Q. "And I assume his actions continued in that manner, is that right?"

A. "Yes sir."

The above statements, although contradicted by the testimony of the other witnesses were not denied or satisfactorily explained by the appellee on the trial of the case, and the appellant insists that they constitute a judicial admission of contributory negligence as a matter of law.

It was shown by the evidence that the appellant and appellee had been friends for several years, that appellee had ridden with appellant on previous occasions and that appellant had been a careful driver. It was also shown that appellant was a man 29 years of age and appellee was a boy four days short of being 14 years of age.

We cannot say that a boy 14 years of age does not know the difference between a drunk man and a man that is sober, or that he cannot tell when a man is drinking and acting "half drunk". But in considering all the facts in this case we feel that the same reasoning should be applied to Joe Ellegood that was applied to Sandra Quisenberry in the case of Cassidy v. Quisenberry, Ky., 346 S.W.2d 304. He stated that he saw appellant take a drink and that he acted "half drunk," but he expressed some doubt about it in his answer, "He was just acting like it. I didn't know whether he was or not." As far as he knew, Stanley was an experienced and careful driver. Appellee's age and inexperience are factors bearing upon his appreciation of the risk he was taking in riding with a driver in Stanley's apparent condition. Reasonable minds could differ as to whether he realized the peril to which he was exposed. We cannot say as a matter of law he should have been cognizant of this danger and consequently we cannot declare as a matter of law that he was guilty of contributory negligence. The appellant, therefore, was not entitled to a directed verdict or a judgment n. o. v.

Appellant's contention, however, that he is entitled to a new trial because of prejudicial statements made by counsel for appellee in his closing argument has merit. These statements were:

"There is another thing that shows so plainly how little some people are interested in other people's worries, they come to twelve Henry County citizens and tell you, they are being so honest and nice to you, that man stood up before you and told you that splitting a man wide open like you gut a fish, taking out his spleen wasn't going to hurt him, he didn't need his spleen anyway. You really feel that way? Would you feel like you would want your child taken to the hospital and pumping blood in him—"

* * * * * *

"You heard the testimony. For ten days he couldn't eat and his intestines

swelled up and they stuck these tubes down his nose. He had to eat through his veins. What would you take for ten days of that? Just how much money?"

\* \* \* \* \* \*

"You're not giving him anything, as a matter of fact, just putting him back where he would have been to that extent, for Twenty-five Thousand ($25,-000.00) Dollars, I wouldn't have had it done for that, and I don't believe you would."

\* \* \* \* \* \*

"We really feel that we are entitled to have for this boy the full Twenty-five Thousand ($25,000.00) Dollars and the doctors' and hospital bills. We are going to leave it to you. This boy and his mother leave it to you. You are their last chance. If he loses this Twenty-one Hundred ($2100.00) Dollars, with a permanently injured leg, lacking a spleen, all the suffering he has gone through for nothing. We don't believe you will, and that you will treat him like you would want yourselves to be treated."

Appellant's objections to each of these remarks were overruled; hence the jury was not admonished to disregard them. A timely motion to discharge the jury likewise was overruled.

In Southern-Harlan Coal Co. v. Gallaier, 240 Ky. 106, 41 S.W.2d 661, 663, counsel's asking for such a verdict as the jurors would think right if they had a son who was "badly crippled or killed by one of these cold-blooded, mercenary coal companies" was held manifestly improper." In Murphy v. Cordle, 303 Ky. 229, 197 S.W.2d 242, 243, it was held improper to call on the jurors "to render such a verdict as they would be willing to take to have such marks upon their child through life or upon themselves through life," and "to make the rich taxi company pay." These are the two cases most often cited in support of the position that in this jurisdiction the "golden rule" type of argument is not permitted. It will be noted, however, that in each of them the impropriety was compounded by invidious allusions to the nature and financial condition of the defendant, a circumstance that was bound to have had a significant bearing on the question of prejudicial effect. Whether the court would have found the "golden rule" argument prejudicial of itself is a matter of speculation.

■ Granted that an argument was improper, the difficult question nearly always is whether the probability of real prejudice from it is sufficient to warrant a reversal, and in this respect each case must be judged on its own unique facts. An isolated instance of improper argument, for example, will seldom be found prejudicial. Cf. H. P. Selman & Company v. Goldstein, Ky., 278 S.W.2d 713. But when it is repeated and reiterated in colorful variety by an accomplished orator its deadly effect cannot be ignored.

■ In some cases the court has declined to find that improper remarks were prejudicial in view of the modest or conservative amount of the verdict. See Louisville Water Co. v. Robinson, 312 Ky. 786, 228 S.W.2d 444; Wilson v. Dalton's Adm'r, 311 Ky. 285, 223 S.W.2d 978; Square Deal Cartage Co. v. Smith's Adm'r, 307 Ky. 135, 210 S.W.2d 340; and Droppelman v. Willingham, 293 Ky. 614, 169 S.W.2d 811. In this case it is not suggested that the verdict was "excessive." Yet it was quite substantial in comparison with the verdicts in the examples just cited, and certainly we are unable to say that it negates the probability of prejudicial influence by the improper argument.

■ On the whole, it is our judgment that the remarks above quoted were improper and prejudicial, requiring reversal for a new trial. We so recommend.

The opinion is approved by the court and the judgment is reversed with directions that a new trial be granted.