**FIRST AND FARMERS BANK OF SOMERSET, INC., Appellant,**

v.

**Charles HENDERSON, Appellee.**

**Charles HENDERSON, Cross–Appellant,**

v.

**FIRST AND FARMERS BANK OF SOMERSET, INC., Cross–Appellee.**

Nos. 87–CA–000765–MR, 87–CA–000812–MR.

Court of Appeals of Kentucky.

Dec. 16, 1988.

Charles C. Adams, Adams and Adams, Somerset, for appellant/cross-appellee.

Richard Hay, Somerset, for appellee/cross-appellant.

Before CLAYTON, MILLER and McDONALD, JJ.

CLAYTON, Judge.

This appeal arises from a jury verdict in favor of appellee/cross-appellant, Charles Henderson, (hereinafter Henderson) against appellant/cross-appellee, First and Farmers Bank of Somerset, Inc., (hereinafter the Bank) as well as post-trial motions resulting in a partial judgment *non obstante veredicto*. We affirm.

The substance of the case concerns the manner in which the Bank repossessed Henderson's speed boat in which the Bank had a valid security interest. There was considerable dispute below as to the underlying question of the Bank's right to declare a default. Since there was no appeal taken from the trial court's decision to grant a directed verdict to the Bank on its claim for default, we will assume there was in fact a default[1].

---

1. The real issue was whether the Bank was in good faith in declaring a default premised upon its conclusion it was insecure. The good faith on this issue, which we assume from the direct-

Prior to going to Henderson's residence, the Bank informally requested that the Pulaski County Sheriff's Department have one of its deputies stand by on the scene. Deputy Sheriff Pat Kelly, in full uniform, carrying his weapon, and in a marked car did meet the Bank's employees at the scene prior to any attempt to repossess the boat.

At the time of the repossession, the boat was located in Henderson's garage. The garage doors were open, however, which allows self-help repossession under KRS 355.9–503 provided there is no other breach of the peace.[2] After the Bank's employees had entered Henderson's property and hitched the boat on its trailer to their vehicle, they attempted to depart. There is a dispute as to whether Henderson arriving on the scene at this time managed to prevent the Bank's employees from removing the boat from his property and into the public street but in any event, both vehicles stopped.[3] There was a confrontation which, at least from Henderson's evidence, could have led to a physical conflict. There was also a clear and vehement verbal objection to the repossession by Henderson.

Any actual violence was forestalled, however, by the timely arrival of Deputy Kelly who had departed his car and approached the antagonists. The deputy's actions at the point of confrontation are in dispute. Henderson maintains that after asking the deputy if the Bank could legally repossess his boat, the deputy nodded in the affirmative. The deputy and the Bank employees allege that he did or said nothing, but merely stood by.

In any event, Henderson without retracting his objection, stated he was going to call his lawyer in order to discuss the re-

possession. The Bank's employees took the opportunity to flee the scene with the boat.

Henderson sued for conversion of the boat, as well as some other miscellaneous items alleged to have been in the boat, but not covered by the security interest. He also demanded punitive damages. Finally, Henderson made a claim for intentional infliction of severe emotional distress. The Bank counterclaimed on the note underlying its security interest.

After the close of the evidence, the trial court directed a verdict for Henderson on the conversion of the boat and to the Bank on its counterclaim. The remaining issues were submitted to the jury.

The jury found the fair market value of the boat was $16,000. As directed, the jury deducted $14,011.76, the amount of the security interest, therefrom and awarded $1,988.24 in damages to Henderson. The jury further awarded $5,000 for emotional distress and $75,000 for punitive damages. Nothing was awarded for the miscellaneous items.

The Bank moved for a new trial or a judgment notwithstanding the verdict. Specifically, the Bank alleged various errors relating to the directed verdict on the conversion claim and the jury verdicts on the emotional distress and punitive damages claims. The Bank further objected to some items submitted by Henderson as costs.

The court granted a judgment notwithstanding the verdict regarding the emotional distress claim but overruled the motion and objections as to the remaining issues. The Bank's appeal and Henderson's cross-

---

ed verdict, does not carry over to the act of repossession.

There is a two-step analysis involved. Initially, there must be good faith in declaring the default. Then, the right to repossess becomes operative. Thereafter, there is a separate requirement of good faith in carrying out the repossession. *See* KRS 355.1–203; KRS 355.9–503; and KRS 355.9–507.

**2.** *C.I.T. Corporation v. Short*, 273 Ky. 190, 115 S.W.2d 899, 900 (1938).

**3.** We note that there would be instances in which a creditor had obtained sufficient dominion over the property to preclude any objection by the debtor. Such does not appear to be the case here. Moreover, since the issue was not argued below or here, we will not speculate on it. *See* Mikolajczyk, Breach of the Peace and Section 9–503 of the Uniform Commercial Code —A Modern Definition for an Ancient Restriction, 82 Dick.L.Rev. 351, 370–72 (1977–78).

appeal followed. All the errors alleged have been preserved.

The initial problem to be analyzed concerns the directed verdict against the Bank on the conversion issue. The standard of review on directed verdicts is enunciated in *Spivey v. Sheeler*, Ky., 514 S.W.2d 667 (1974). All fair and reasonable inferences must be drawn in favor of the party opposing the motion, and the court must conclude the evidence was insufficient to sustain a verdict for the opposing party. *Id.* at 673.

The controlling question regarding the directed verdict involves the proper application of KRS 355.9–503. There, it is provided that a secured party, when the debtor is in default, may carry out a self-help repossession provided there is no breach of the peace.

A breach of the peace has been defined to include both actual violent acts, and acts likely to induce violence. *O'Leary v. Commonwealth*, Ky., 441 S.W.2d 150, 154 (1969). There has not been a Kentucky case directly applying the general rule to KRS 355.9–503.

As the commentators note, pre-Code cases are still good law since breach of the peace is not defined in the statute. D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky*, Section 8.6(a) at 833 (1983). Unfortunately, there are no cases, even pre-Code, which analyze the effect of the presence of a peace officer on a self-help repossession.[4]

■ Even without reference to the presence of the deputy, it is clear that repossession in the face of the debtor's objection constitutes a breach of the peace. *National Bond, supra; See* Leibson and Nowka at 834. Moreover, the commentators state that a disagreement over repossession ought not have to rise to the level of an assault before a breach is deemed to occur. Leibson and Nowka at 834.

A quick survey of self-help repossession cases from other jurisdictions is supportive of the commentator's position. In *Big Three Motors, Inc. v. Rutherford*, Ala., 432 So.2d 483, 485–86 (1983), the Supreme Court of Alabama stated that the use of force, trickery, and fraud constituted a breach of the peace. While the Court of Appeals of Indiana, in *Census Federal Credit Union v. Wann*, Ind.App., 403 N.E. 2d 348, 352 (1980), held that self-help repossession could not be had if it was verbally or otherwise contested by the debtor at the actual time and immediate vicinity of the attempted repossession. If such were the case, the creditor must desist and proceed through judicial process. Finally, in *Morris v. First National Bank and Trust Co. of Ravenna*, 21 Ohio St.2d 25, 254 N.E.2d 683, 686–87 (1970), Ohio's highest court held that a breach of the peace was committed when the creditor's agents physically confronted the debtor and disregarded his request to stop even though there was no actual physical conflict.

The testimony given establishes a clear objection by Henderson. Even if repossession over a mere verbal objection is insufficient to establish a breach of the peace, it is patent that without Deputy Kelly's limited intervention, there would have been a more serious altercation. As a result, it is clear that unless the presence of the deputy negates the breach of the peace, the directed verdict against the Bank was proper.

■ We are, thus, directly confronted with the novel issue of the effect of a peace officer on a self-help repossession. While at first blush the Bank's decision to informally obtain the presence of a peace officer seems to serve the salutary purpose of preserving the peace, a closer analysis reveals it as violative of KRS 355.9–503.

4. A case typical of those finding a breach of the peace prior to the adoption of the Code is *National Bond & Investment Co. v. Whithorn*, 276 Ky. 204, 123 S.W.2d 263 (1938). There, two employees of the creditor stopped the debtor on a public street and harangued and harrassed him until the repossession was completed. The court stated that a repossession could not be had if a breach of the peace resulted without explicitly defining the term, any restraint was placed on the debtor, or any force was used against the debtor. *Id.* at 265. The court went on to approve both the compensatory and punitive damages awarded. *Id.* at 266.

■ If a creditor is allowed to unofficially use the powers of the state to squelch potential breaches of the peace,[5] he can effectively evade or avoid the statute. The statute makes it clear that a creditor runs the risk of serious liability if he proceeds with a self-help repossession when there is a serious objection by the debtor. If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession.

On that issue, *Stone Machinery Company v. Kessler*, 1 Wash.App. 750, 463 P.2d 651 (1970), is quite persuasive. There, the creditor secured the local sheriff in full regalia to assist in the repossession of a caterpillar tractor since the debtor was inclined toward violent defense of his property. The court held that where the officer was acting under color of office, without legal process, and the creditor thereby took possession of the collateral over debtor's objection, the creditor had committed trespass. *Id.* at 654. The court explained that the actions amounted to constructive force, intimidation, and oppression constituting a breach of the peace. Moreover, the creditor's actions completely circumvented the purpose and intent of the Code. *Id.* at 655.

Although the intervention of Deputy Kelly was not as active as that in *Stone Machinery*, the distinction is without difference. The net effect in both cases was to override the debtor's right to object. As a result, under the authorities cited, there was a breach of the peace.

The court below correctly granted a directed verdict on the conversion issue. There was not a constructive breach of the peace caused by the mere presence of the deputy. The evidence, however, even when viewed most favorably to the Bank, established that the deputy sheriff acting under color of office, without any legal process, enabled the Bank to repossess over Henderson's objection. There was, thus,

an actual breach of the peace. Since the decision below was correct, although based upon the wrong grounds, it will not be disturbed on appeal. *Haddad v. Louisville Gas & Electric Company*, Ky., 449 S.W.2d 916, 919 (1969).

■ We move on to the Bank's objections to the punitive damages awarded. It is argued that the Bank was entitled to a directed verdict on the issue. Alternatively, it is asserted that a specific instruction on the issue of good faith was in order and that, in any event, the award made was excessive.

On the directed verdict issue, the Bank stands or falls on *Fort Knox National Bank v. Gustafson*, Ky., 385 S.W.2d 196 (1964). There, the repossession of a mobile home, which was being used as a diner, was at issue. The court found the Fort Knox bank to have acted in good faith. *Id.* at 200. As a result, technical deficiencies in the Fort Knox bank's claim and delivery action would not give rise to a cause of action, nor would liability for punitive damages lie.

We find *Gustafson* distinguishable. The judge below never found that the Bank was in good faith in carrying out the repossession. As we previously noted, good faith in the repossession attempt is a distinct issue from good faith in the declaration of a default. While the judge below may have assumed the latter, the jury did not find the former, or it could not have awarded punitive damages. We further note that *Gustafson* does not involve self-help repossession. As a result, the Fort Knox bank was properly protected from liability for any minor technical deficiencies since it had resorted to the judicial process. The Bank has no such shield.

The evidence of the Bank's conduct in making the repossession is clear. Their actions constituted a breach of the peace, and Henderson was properly granted a di-

5. We have been cited to cases discussing whether an officer's intervention in a self-help repossession constitutes state action. *See U.S. v. Coleman*, 628 F.2d 961 (6th Cir.1980); and *Gary v. Darnell*, 505 F.2d 741 (6th Cir.1974). We do not find them exceptionally helpful since the degree of intervention by the officer necessary in our analysis is less than a finding that the state compelled the private party through the actions of the officer to act as he did. *See Coleman* 628 F.2d at 964.

rected verdict. Since it was established that the Bank had violated KRS 355.9–503, Henderson was entitled to damages suffered as a result. KRS 355.9–507.

It is well established that punitive damages may be recovered in an action for conversion if the defendant's conduct is sufficiently egregious. *Hensley v. Paul Miller Ford, Inc.*, Ky., 508 S.W.2d 759, 762 (1974). To recover punitives, there must be a finding that the defendant acted with malice, whether actual or implied. Implied malice is conscious wrongdoing. *Fowler v. Mantooth*, Ky., 683 S.W.2d 250, 252 (1984). In determining whether to make such an award, the trier of fact may consider the character of the defendant and the nature and extent of the harm to the plaintiff. In analyzing the character of the defendant's act, the trier may consider its outrageousness, defendant's extent of culpability and motives, the relationship between the parties, and the existence or absence of provocation. *Id.* at 253.

There is no doubt that a question of fact existed with regard to whether the Bank's conduct in the repossession implied malice. It cannot be said that the Bank's decision to proceed with the repossession after Henderson's objection and his return to his house to call his lawyer could not be found by a reasonable man to show malice. That being the case, a directed verdict would have been improper. *Spivey, supra.* It is equally true that the denial of the judgment notwithstanding the verdict was proper since the evidence must be construed most favorably in favor of the verdict winner. *Hensley, supra.*

■ A separate instruction on the issue of good faith was not required. We are directed to give instructions which provide only the bare bones. The instructions can subsequently be fleshed out by counsel in closing argument. *Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974).

Here, the relevant instruction states the law properly. *See Hensley* and *Fowler, supra.* The question of good faith is necessarily included in the instructions as given. Certainly, counsel for the Bank could argue, and apparently did, that the Bank

was in good faith. If the jury had believed the Bank was in good faith, it could not have returned a verdict awarding punitives.

■ The Bank next asserts the awarded punitive damages were excessive. The test for the trial court is often styled "the first blush rule." *Davis v. Graviss*, Ky., 672 S.W.2d 928, 932 (1984). On review here, we do not apply that rule. Instead, we are directed not to substitute our judgment on the question but can reverse only if the court's ruling was clearly erroneous. *Id.* at 933.

■ Although the award does seem high, it is apparent that the jury believed Henderson's assertion that the Bank essentially stole his boat. It is also apparent that the able judge below is in a better position than we are to decide whether the jury's award was excessive. We, therefore, do not find the judge's decision overruling the Bank's post-trial motions clearly erroneous on the issue of excessiveness and hence affirm.

■ The Bank's fifth allegation arises from closing argument. We do not find the argument made violative of the golden rule standard.

■ Notably, the essence of a golden rule argument is to ask the jurors to step into the shoes of the plaintiff. *Stanley v. Ellegood*, Ky., 382 S.W.2d 572, 575 (1964). Here, the request was to act before it is too late without any direction to step into Henderson's shoes.

We note, moreover, that previous cases finding violations of the golden rule standard are also premised upon the combination of the argument and mention of the defendant's financial condition. It was the combination of the two, coupled with repetition, that was particularly invidious. *Id.* Here, we find neither mention of the Bank's financial condition nor repetition.

As a result, the judge's ruling was not in error. It is beyond question that the trial judge is in the best position to assess any actual prejudicial effect. We decline to substitute our judgment in its place.

The final argument of the Bank is that certain costs charged by Henderson were not allowable. Specifically, Henderson sought to recover the costs involved with certain depositions taken for discovery but not expressly used at trial.

Depositions, with any limitation, are included in the list of items recoverable as costs. CR 54.02. The cases cited by the Bank are not on point. The issue here does not relate to expert fees or additional copies. *See Commonwealth, Transportation Cabinet, Department of Highways v. Wireman*, Ky.App., 714 S.W.2d 159 (1986); *Brookshire v. Lavigne*, Ky.App., 713 S.W. 2d 481 (1986); and *Phipps v. Collinsworth*, Ky.App., 691 S.W.2d 907 (1985). We note finally that a deposition taken on discovery can be vital to preparation for and the actual conduct of a trial even if it is neither read into evidence nor expressly used to impeach a witness. The costs allowed were correct.[6]

On the cross-appeal, we likewise find the trial court's decision was proper. A judgment notwithstanding the verdict is proper when even if after all the evidence is construed most favorably to the verdict winner, a finding in his favor would not be made by a reasonable man. *Hensley*, 508 S.W.2d at 762.

Whatever *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), actually decided beyond holding the five-year statute of limitations applicable, it is clear that not every upset plaintiff can recover for emotional distress. *See Zurich Insurance Company v. Mitchell*, Ky., 712 S.W.2d 340 (1986). The judge below correctly noted that not every bad act gives rise to a cause of action for the intentional infliction of severe emotional distress, that an extra element of damages for all plaintiffs was not created nor was the distress complained of by Henderson in any sense severe.

The foregoing being correct, the judgment notwithstanding the verdict on the emotional distress claim was correct. We, therefore, affirm.

For all the above listed reasons, we affirm the decision of the Pulaski Circuit Court sustaining the directed verdict on the conversion issue for Henderson, the jury verdict on the punitive damages, and the judgment notwithstanding the verdict on Henderson's emotional distress claim.

The judgment of the Pulaski Circuit Court is affirmed on both the direct and cross appeals.

MILLER, J., concurs.

McDONALD, J., concurs in result and files a separate opinion.

McDONALD, Judge, concurring.

I concur with the result reached by the majority and I agree with much of its reasoning. However, the majority seems to suggest that it is never proper for a police officer to attend a self-help repossession and that his very presence constitutes a breach of the peace. With this I must disagree. It is one thing to hold that an officer of the law may not *participate* in a self-help repossession. It is quite another to say that he may never be present as a neutral observer. This is an important distinction, and I think it serves to distinguish the present situation from the case principally relied on by the majority, *Stone Machinery Co. v. Kessler*, 1 Wash.App. 750, 463 P.2d 651 (1970). The *Kessler* decision turned on the fact that the sheriff took an active role in the repossession, announcing to the debtor, "We come over to pick up this tractor." The same decision also implicitly condones having a neutral officer stand by to prevent violence:

> The words used [by the debtor] in announcing his intention, namely, "someone would get hurt," were of such a nature as to justify the presence of a sheriff during any attempt at peaceable repossession although, as we have already held, this did not justify participation by the sheriff in the process of repossession.

463 P.2d at 656.

In the present case, I disagree with the majority's conclusion that "the deputy

---

**6.** We also note that the correctness of the trial judge's allowance of costs here is in accord with a recent amendment to CR 54.02 which was effective January 1, 1988.

sheriff acting under color of office ... enabled the Bank to repossess over Henderson's objection." On the contrary, it appears to have been Henderson's momentary absence, when he went inside to phone his attorney, that enabled the bank's agents to take the property and run. The majority acknowledges that the officer's presence in fact served to forestall actual violence between the antagonists. Since the very remedy of self-help repossession is potentially inflammatory, I would hesitate before ruling that a police officer may never be summoned—by either side—to prevent an eruption of violence.