Florence A. HOLLIBUSH, Plaintiff-Appellant,

v.

FORD MOTOR CREDIT COMPANY, Defendant-Respondent.

Court of Appeals

*No. 92–0801. Oral argument August 26, 1993.—Decided October 28, 1993.*

(Also reported in 508 N.W.2d 449.)

For the plaintiff-appellant the cause was submitted on the briefs of *Timothy J. Peyton* of Madison, and orally argued by *Timothy J. Peyton*.

For the defendant-respondent the cause was submitted on the brief of *Hollis E. Wright* of *Foley & Lardner* of Milwaukee, and orally argued by *Thomas L. Shriner*.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   Florence Hollibush appeals from a partial summary judgment dismissing several of her Wisconsin Consumer Act (WCA) claims against Ford Motor Credit Company (FMCC). She also appeals from a posttrial order dismissing a claim against FMCC under sec. 425.206(2), Stats., a provision of the WCA prohibiting repossessions of collateral which cause a breach of the peace. Based upon undisputed facts, we conclude that a breach of the peace occurred when FMCC's agent repossessed Hollibush's automobile. We therefore need not address her other claims of error, and remand for further proceedings.

In 1986, Hollibush purchased a new Ford Bronco II automobile on credit from a Ford dealer. The dealer assigned the Wisconsin Retail Installment Contract to FMCC. Ms. Hollibush's record of making the required payments under the contract was poor, ultimately leading to a replevin action in 1988. On June 1, 1988, Ford obtained a replevin judgment, and an execution was issued. But Ford did not obtain possession of the vehicle. Instead, Hollibush and Ford agreed that Ford

would not execute on its judgment if Hollibush made future payments on time and paid the cost of extending the contract beyond its termination date.

Again, Hollibush did not make payments on time, though she paid $2,772.36 in principal and interest, $308.02 in extension fees, and $9.00 in late charges. She was not current in her payments when, on January 19, 1990, Badgerland Auto Recovery, Inc. repossessed the automobile at Ford's request.

Hollibush brought this action, alleging that Ford had violated ch. 425, Stats., part of the WCA, chs. 421 to 427, Stats. The penalties she sought under secs. 425.305 and 425.308, Stats., included a return of all money she had paid to Ford, a return of the vehicle or its value at the time of repossession, and her reasonable attorney's fees. She also sought punitive damages. The trial court dismissed all but one of Hollibush's claims on Ford's motion for summary judgment, and dismissed the final claim after trial.

Section 425.206, Stats., provides in pertinent part:

> (1)  Notwithstanding any other provision of law, no merchant may take possession of collateral or goods subject to a consumer lease in this state by means other than legal process in accordance with this subchapter except when:
>
> . . . .
> (b)  Judgment for the merchant has been entered in a proceeding for recovery of collateral or leased goods . . . .
>
> . . . .
> (2)  In taking possession of collateral or leased goods, no merchant may (a) commit a breach of the peace . . . .

Badgerland's employee testified that at about midnight on January 18, 1990, he arrived at Hollibush's

tavern in the town of London. Her vehicle was parked in front of the tavern, and the employee hooked it up to his tow truck. He saw a man looking out of the tavern window at him and entered the tavern to tell the man who he was. He spoke with Hollibush and with William Finn, Hollibush's fiance. Finn called an attorney and then stated that he would call the sheriff's office. Hollibush observed Finn's conversation and would occasionally say something. Finn told Badgerland's employee: "You are not going to take the Bronco." Shortly after that, the employee left with Hollibush's automobile.

Hollibush and Finn's description of the repossession differs considerably from the description given by Badgerland's employee, but both testified that Finn told the employee not to take the automobile.

The WCA does not define the term "breach of the peace." But the same term is found in sec. 9-503 of the Uniform Commercial Code (UCC) and in sec. 409.503, Stats. That section provides: "In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." Though the UCC does not define "breach of the peace," numerous cases in other jurisdictions have considered whether repossessions under various fact situations constituted breaches of the peace.

FMCC argues that the meaning of the phrase "breach of the peace" differs in the UCC and the WCA. Citing *Williams v. Ford Motor Credit Co.*, 674 F.2d 717, 719 n.4 (8th Cir. 1982), it contends that this is so because the purpose behind sec. 9-503 is "to prevent creditors from conducting self-help remedies without providing a debtor with some recourse to judicial

review." But that is not the justification for sec. 9-503 that *Williams* suggests. The objectives of sec. 9-503 are: (1) to benefit creditors by avoiding judicial process; (2) to benefit debtors by reducing the cost of credit; and (3) to discourage extrajudicial acts which would probably result in violence. *Williams*, 674 F.2d at 719 n.4. We agree with those statements from *Williams*. There is nothing in sec. 9-503 which suggests that creditors are required to repossess collateral in a way that provides recourse to a judicial review. Absent the WCA, a creditor bound only by sec. 9-503 could repossess without ever seeking judicial authorization.

Under sec. 9-503 and the WCA, a creditor may repossess collateral if it does not breach the peace in the process. The only added requirement of the WCA is that a creditor must first obtain a judgment of replevin. In either instance, when debtor resistance threatens a breach of the peace, a requisition to the sheriff must be obtained. *See* sec. 810.03, Stats. When a judgment of replevin has been obtained, as required by the WCA, the court is not burdened with the case all over again, as FMCC suggests. The only extra burden is to draft the necessary documents which enable the sheriff to obtain the collateral. *See* sec. 815.05(6), Stats.

The legislative history of the WCA also suggests that no new meaning of "breach of the peace" was intended by the use of that term in sec. 425.206, Stats. In Davis, *Legislative Restrictions of Creditor Powers and Remedies: A Case Study of the Negotiation and Drafting of the Wisconsin Consumer Act*, 72 MICH. L. REV. 1, 42 (1973), the author discusses the act's prohibition against a creditor entering a debtor's dwelling:

> First, nearly all creditors were dissatisfied with the inability of the repossessing party to enter a

dwelling. This requirement, they felt, would lead to the absurd result that household goods would have to be left out on the lawn before they could be repossessed. They argued that the UCC breach-of-the-peace restriction effectively prevents violence, and that, even if it is not sufficient, the creditor should at least be able to enter a residence with the consent of the debtor. [Footnote omitted.]

█
While the dwelling entry negotiations are of no concern in deciding this case, the passage quoted shows that the negotiators who developed the WCA were well aware of the breach of peace provision in sec. 9-503 of the UCC. It is not reasonable to conclude that those negotiators intended a meaning of "breach of the peace" different from the meaning used in the UCC, yet did nothing to explain that alleged difference. We conclude that the legislature, having knowingly used an identical phrase in two sections of similar statutes, intended that it have the same meaning in both statutes.

█
We agree with FMCC that consent of the debtor is not necessary for a peaceful self-help repossession.[1] But there is a considerable difference between lack of consent and a debtor's affirmative statement to a person in the process of repossessing collateral that the collateral may not be taken.

█
Having determined that "breach of the peace" has the same meaning in secs. 409.503 and 425.206(2), Stats., we need to examine cases which interpret the

[1] The most familiar lack-of-consent situation is a repossession without the knowledge of the debtor. Lack of consent, without more, is not a breach of the peace. *Butler v. Ford Motor Credit Co.*, 829 F.2d 568, 570 (5th Cir. 1987).

meaning of that phrase in sec. 9-503 of the UCC, because sec. 409.503 is identical to the UCC's sec. 9-503. And, because the phrase "breach of the peace" predates the UCC, we may consider pre-Code authority. *First and Farmers Bank of Somerset v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988).

> Recaption or *reprisal* is another species of remedy by the mere act of the party injured. This happens when any one hath deprived another of his property in goods or chattels personal, or wrongfully detains one's wife, child, or servant: in which case the owner of the goods, and the husband, parent, or master, may lawfully claim and retake them wherever he happens to find them, so it be not in a riotous manner, or attended with a breach of the peace. The reason for this is obvious; since it may frequently happen that the owner may have this only opportunity of doing himself justice: his goods may be afterwards conveyed away or destroyed; and his wife, children, or servants concealed or carried out of his reach; if he had no speedier remedy than the ordinary process of law. If therefore he can so contrive it as to gain possession of his property again without force or terror, the law favors and will justify his proceeding. But as the public peace is a superior consideration to any one man's private property; and as, if individuals were once allowed to use private force as a remedy for private injuries, all social justice must cease, the strong would give law to the weak, and every man would revert to a state of nature; for these reasons it is provided that this natural right of recaption shall never be exerted where such exertion must occasion strife and bodily contention, or endanger the peace of society.

3 W. BLACKSTONE, COMMENTARIES *4-5.

Professors White and Summers observe: "When the creditor repossesses in disregard of the debtor's unequivocal oral protest, most courts find the creditor guilty of a breach of the peace." 2 J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 27-6, at 580 (3d ed. 1988) (footnote omitted). FMCC argues that the cases cited by White and Summers do not support this assertion. We disagree. In *Manhattan Credit Co. v. Brewer*, 341 S.W.2d 765, 767 (Ark. 1961), a case cited by White and Summers, the creditor repossessed an automobile though the owner's husband told the creditor's agent that "they objected to him taking the car." The court said: "[I]n the case under consideration, it appears equally clear that Mrs. Brewer could not have prevented appellant's agent from driving her automobile away without her having to exercise force to prevent it." *Id.* Though it is unclear what part a later confrontation at a garage played in the court's decision, it is plain that the court considered the debtor's objection the deciding factor. And this is reasonable. Once a debtor unsuccessfully demands that a repossessing creditor desist, the only way to enforce that demand is with a breach of the peace, something the common law, the UCC and the WCA prohibit.

Other cases cited by White and Summers also support their conclusion. In *Wilson v. Kuykendall*, 73 So. 344 (Miss. 1917), the creditor took a mule from the debtors' barn over their objection. The court affirmed a judgment in the debtors' favor. In *Morris v. First Nat'l Bank and Trust Co. of Ravenna*, 254 N.E.2d 683, 686-87 (Ohio 1970), the court said:

> [W]e are constrained to hold that when appellee's agents were physically confronted by appellant's representative, disregarded his request to desist

their efforts at repossession and refused to depart from the private premises upon which the collateral was kept, they committed a breach of the peace within the meaning of [sec. 9-503] . . . .

In *Morrison v. Galyon Motor Co.*, 64 S.W.2d 851, 853 (Tenn. Ct. App. 1932), the court concluded that the debtor, Morrison, could not prevail because he was not present to voice an objection to a repossession. It added:

Of course, had complainant, Morrison, been present at the time to give evidence that his contract assent to such taking was withdrawn or had such been indicated by his agents or the ones in whose possession he had apparently left the truck, then the agent would not have been authorized to physically take possession of the truck against their consent for such an action would be calculated to provoke a breach of the peace . . . .

*Id.*

Other commentators agree with White and Summers. In 9 W. HAWKLAND, UNIFORM COMMERCIAL CODE SERIES § 9-503:03, at 756 (1991), the author notes: "Generally, however, if the debtor protests the secured party's repossession, or perhaps even if a third party, such as a spouse or child, protests, a breach of peace will be imminent, and self-help repossession should no longer be an alternative for the secured party." (Footnote omitted.) A law review comment observes:

The greater expansion in the breach of peace definition occurred when the courts began to rule that the right to assert the self-help remedy could be foreclosed by the debtor's objection. This principle is based upon the "potential for violence" definition of breach of peace in that an objection by

the debtor will serve as the foundation for a possible violent confrontation if the objection is ignored. When a debtor is faced with the prospect of repossession, he need not resort to violence nor exert futile efforts against overwhelming odds to make known his objection.

Comment, *Breach of Peace and Section 9-503 of the Uniform Commercial Code — A Modern Definition for an Ancient Restriction*, 82 DICK. L. REV. 351, 363-64 (1978) (footnotes omitted) (hereinafter *Breach of Peace*).

Cases interpreting sec. 9-503 also support Hollibush's assertion that "no means no." In *Dixon v. Ford Motor Credit Co.*, 391 N.E.2d 493, 497 (Ill. App. Ct. 1979) (citing J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 26-6, at 972 (1st ed. 1972)), the court said: "When a creditor repossesses in disregard of the debtor's unequivocal oral protest, the repossession may be found to be in breach of the peace." In *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 351-52 (Ind. Ct. App. 1980), the court said:

> However, even in the attempted repossession of a chattel off a street, parking lot or unenclosed space, if the repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court.

The Kentucky Court of Appeals said:

> Even without reference to the presence of [a deputy sheriff], it is clear that repossession in the face of the debtor's objection constitutes a breach of the peace. Moreover, the commentators state that a

disagreement over repossession ought not have to rise to the level of an assault before a breach is deemed to occur.

*First and Farmers Bank of Somerset*, 763 S.W.2d at 140 (citations omitted).

The court then did a survey of self-help repossession cases from other jurisdictions, and concluded that they supported the holding that a self-help repossession in the face of a debtor's contemporaneous objection constitutes a breach of the peace. *Id.* Other jurisdictions have reached a similar conclusion. *See Hopkins v. First Union Bank of Savannah*, 387 S.E.2d 144, 146 (Ga. Ct. App. 1989); *Martin v. Dorn Equip. Co.*, 821 P.2d 1025, 1028 (Mont. 1991).

In *Oaklawn Bank v. Baldwin*, 709 S.W.2d 91, 92 (Ark. 1986), the court concluded:

> The truck was repossessed from Baldwin's driveway. There is no evidence that McClendon entered any gates, doors, or other barricades to reach the truck. He just attached the truck to his wrecker in the dead of the night and drove away. There was no confrontation with Baldwin. He was asleep when the truck was repossessed. The repossession was accomplished without breaching the peace according to our cases.

FMCC asserts that cases arising under the UCC are inapposite because the UCC does not have the requirement found in the WCA that repossession may not occur until a replevin judgment has been obtained. We disagree. The underlying theory of the UCC cases is that a verbal objection to a repossession is the precursor to violence, and that it should not be necessary for a debtor to resort to violence to provide the breach of the peace necessary to defeat a self-help repossession. This

potential for violence exists whether or not a replevin judgment exists. Repossessions are emotional matters, and a paper judgment does not calm this emotion.

The way to avoid both an emotional confrontation and a breach of the peace is to take the collateral without the debtor's knowledge, as in *Oaklawn Bank*. As one author noted: "While this construction of the breach of peace prohibition may reduce the creditor's self-help remedy to mere form without substance, the rationale for this construction stems from the 'potential for violence' definition of the breach of peace restriction." *Breach of Peace*, 82 DICK. L. REV. at 364-65 (footnote omitted).[2]

We conclude that the undisputed fact is that Hollibush or her fiance told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace, contrary to the proscription found in sec. 425.206, Stats. Section 425.206 provides that a violation of that section is subject to the remedy found in sec. 425.305, Stats. Because Hollibush has prevailed in this action, she is entitled to reasonable attorney's fees as provided in sec. 425.308, Stats. We remand for the trial court to determine damages and attorney's fees.

In the trial court and again here, Hollibush asserts that she is entitled to recover punitive damages as a result of FMCC's breach of the peace. We see no reason why punitive damages may not be awarded in a proper sec. 9-503 case. But prior to submitting a punitive dam-

---

[2] We do not believe that creditors' self-help remedy will suffer much. Badgerland's president testified that only five or ten percent of involuntary repossessions involved contact with the owner of the collateral.

812

age claim to a jury, a trial court determines whether the evidence establishes a proper case for the allowance of punitive damages. *Maskrey v. Volkswagenwerk Aktiengesellschaft*, 125 Wis. 2d 145, 161, 370 N.W.2d 815, 823 (Ct. App. 1985). Unless there exists evidence upon which a jury could find that the defendant's conduct was outrageous, the trial court should not submit the issue of punitive damages. *Id.* Punitive damages are also available where the defendant acts in wanton, willful or reckless disregard of the plaintiff's rights or interests. *Loveridge v. Chartier*, 161 Wis. 2d 150, 188, 468 N.W.2d 146, 159 (1991). Here, the trial court did not consider the issue of punitive damages because it concluded that no breach of the peace had occurred. But it made findings that no physical confrontation occurred, and that the language used by FMCC's agent was only slightly more harsh than the normal conversational speech the agent had described in his testimony.

■■■

Ordinarily, we would reverse to permit the trial court to consider whether FMCC's agent's conduct was outrageous, or in wanton, willful or reckless disregard of Hollibush's rights. But the trial court's findings show that the only thing the agent did was to take the vehicle after being told not to do so. This is not the type of conduct necessary to support a claim for punitive damages. On remand, the trial court should not award any punitive damages.

Hollibush also argues that when she and FMCC entered the extension agreement, a new consumer credit transaction resulted, requiring FMCC to again obtain a replevin judgment. She contends that FMCC's practices were unconscionable, entitling her to her actual damages and her attorney's fees, as permitted

by secs. 425.107, 425.303 and 425.308, Stats. She claims she was entitled to a second notice of right to cure default under sec. 425.105, Stats., and damages for an asserted violation of 15 U.S.C. § 1604. We do not address these claims because they would be cumulative to the remedy to which Hollibush is entitled for FMCC's breach of the peace.

*By the Court.*—Posttrial order reversed and cause remanded for further proceedings consistent with this opinion.