ASSOCIATES FINANCIAL SERVICES COMPANY OF WISCONSIN, INC., a Wisconsin corporation, Plaintiff-Respondent and Cross-Appellant,

v.

Walter C. HORNIK, Jr., and Shirley A. Hornik, his wife, Defendants-Appellants and Cross-Respondents,

UNITED STATES OF AMERICA acting through the Farmers Home Administration, U.S. Department of Agriculture, and Wausau Medical Center, S.C., a Wisconsin service corporation, Defendants.

Court of Appeals

*No. 82–1414. Submitted on briefs May 2, 1983.—Decided June 21, 1983.*
(Also reported in 336 N.W.2d 395.)

164

For the appellants the cause was submitted on the briefs of *Trembath, Hess, Miller & Seidl, S.C.*, of Wausau.

For the respondents the cause was submitted on the brief of *Wm. E. Kaplan* of Wausau.

Before Dean, Cane, and Dykman, JJ.

DEAN, J. Shirley and Walter Hornik, Jr., appeal from a judgment denying their counterclaim alleging violations of the Wisconsin Consumer Act, Consumer Transactions—Debt Collections, ch. 427, Stats. The Horniks contend that the trial court erred by not finding that Associates Financial Services Company of Wisconsin, Inc., contacted the Horniks with frequency and in a manner calculated to harass them, that Associates wrongfully contacted Walter's employer, or that Associates used obscene and threatening language. Because we conclude that the trial court's findings are not clearly erroneous, we affirm that part of the judgment dismissing the Horniks' counterclaim. The Horniks also contend that the trial court erred in its assessment of damages and in its conclusion that the Horniks' answer was frivolous. Associates cross-appeals from the judgment insofar as it assesses the costs of its determination that the Horniks' answer was frivolous against the Horniks, instead of against their counsel. Because we conclude that the Horniks' counterclaim is not frivolous, we reverse the award of frivolous costs to Associates and do not reach the additional issues raised by Associates.

The Horniks obtained a consumer loan from Associates,[1] giving them a second mortgage on their home. The

---

[1] Associates stipulated that the loan was a consumer loan and, thus, subject to the provisions of the Wisconsin Consumer Act, chs. 421–427, Stats.

eight-year contract called for ninety-six monthly payments, beginning August 11, 1979, and ending July 11, 1987; total payment on the contract was $30,144, of which $14,223.67 was the finance charge. The first payment was timely made. Each subsequent payment the Horniks made was late. The Horniks completed the July, 1980, payment on March 31, 1981. No further payments were made. Associates commenced this foreclosure action on July 9, 1981.

During this period, Walter Hornik worked as a credit manager for Northern Mattress Company. Among his duties, Walter obtained consumer financing for Northern Mattress customers from Associates. Walter and Associates' employes had frequent telephone contact several times per day.

In answer to Associates' complaint, the Horniks denied they had defaulted and asserted a counterclaim alleging violations of debt collection practices. On Associates' motion for summary judgment, the court granted judgment of foreclosure. The Horniks' counterclaim was tried to the court without a jury.

## HARASSMENT BY TELEPHONE CALLS

We conclude that the trial court's finding that Associates did not harass the Horniks is not clearly erroneous. *See* sec. 805.17(2), Stats. In addition to disputing evidentiary questions, the parties dispute how the court should apply sec. 427.104(1)(g), Stats., which provides:

[A] debt collector shall not:

. . . .

(g) Communicate with the customer or a person related to him with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;

The Horniks contend that the court should apply an objective standard. They essentially agree that the court

should ask whether Associates' behavior would have been expected to harass a reasonable person. Associates contends that the standard is whether Walter and Shirley Hornik were harassed.

No prior case interprets or applies ch. 427, and this case presents several questions of first impression. We conclude that the claim created in ch. 427 is in nature a tort action.[2] The four elements of a tort are duty, breach, causation, and injury. *Anderson v. Green Bay & Western Railroad,* 99 Wis. 2d 514, 516, 299 N.W.2d 615, 617 (Ct. App. 1980). Creditors have a duty to act reasonably when collecting debts from their debtors, and in sec. 427.104 the legislature codifies rules describing the duty of care debt collectors owe to debtors. In sec. 427.105, Stats., the legislature provides that a debtor injured by

---

[2] Prior to enactment of ch. 427, a consumer who suffered from a debt collector's intentional infliction of emotional harm could bring an action for damages and that action was recognized as a tort. *Muhich v. Family Finance Corp.,* 72 Wis. 2d 625, 241 N.W. 2d 619 (1976); *see also* Restatement (Second) of Torts § 46 (1965). The supreme court has recently stated: "Ordinarily in modern procedure the theoretical distinction between contract and tort is not significant." *Landwehr v. Citizens Trust Co.,* 110 Wis. 2d 716, 720, 329 N.W.2d 411, 413 (1983). In this case, we find it useful to refer to the nature of the claim to place the parties' arguments in perspective. The Horniks, who contend that the standard is objective, focus on the breach of duty element of the claim. Instead of taking issue with the Horniks, Associates' response changes focus to the Horniks' injury. If Associates' breach of duty caused injury to the Horniks, the Horniks would be entitled to actual damages. The damage question, then, is a subjective inquiry. In most cases, the finding that no damage occurred would be a complete defense to a claim. Section 427.104, however, provides for a penalty in addition to actual damages. Consequently, we must consider the duty of care and breach of duty issues presented in this case in spite of the trial court's findings that the Horniks suffered no damages.

a collector who breached this duty is entitled to actual damages and a penalty.

Section 427.104(1)(g) creates a standard that proscribes communication "as can reasonably be expected to threaten or harass the customer." The focus is whether the collector's communication can reasonably be expected to threaten or harass. We conclude that the duty of care element is better characterized as objective. The standard's objective character does not create a question of law, however. The application of a duty of care to a given set of facts will generally remain within the province of the trier of fact.

In its ruling from the bench,[3] the trial court found that the Horniks suffered no actual damage. The trial court found that Associates' telephone record was more credible than the Horniks' evidence both as to number and content of calls. The court found that the calls were not made at unusual times or places; that the four or five calls per month related to the separate monthly payments, each of which was late, and did not accumulate to create a threatening or harassing character; and that the Horniks did not demand that Associates stop calling. The trial court found that Associates did not communicate with a frequency that was reasonably expected to threaten or harass the customer.

---

[3] The court, in its lengthy oral findings, expressly adopted the Horniks' contention that sec. 427.104 established objective standards. The Horniks contend, however, that the court in fact applied a subjective standard. The trial court's references to subjective feelings create ambiguity as to what standard the court applied in fact. Like a contract, we construe a judgment as a question of law, and we conclude that adequate findings of fact applying the correct standard support the judgment. We note, however, that in a case like this requiring complex and extensive findings, a trial court might take more care when making its findings or make them in writing.

The Horniks suggest that the number of calls by itself shows a frequency of communication reasonably expected to harass. We disagree. Instead, we agree with the Florida Court of Appeals, which stated in considering a similar statute: "How frequent must communication be to constitute harassment? Suggestions of a wholly quantified standard seem artificial, because the effect of repeated telephone calls is colored by their tone and purpose." *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 676 (Fla. App. 1977) (one hundred calls over a five-month period, including calls after a request to stop and an instruction to initiate legal action, were harassment). Because calls must be considered in context, a holding that three calls is harassment, *Housh v. Peth*, 133 N.E.2d 340, 344 (Ohio 1956) (three calls made in fifteen minutes to a teacher while at work), is not inconsistent with a holding that fourteen calls is not harassment. *Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864, 873 (N.D. 1981) (calls made over a one-month period and debtors made no instruction to stop).

The trial court adopted Associates' ledger card as the best evidence of the number and content of Associates' calls to the Horniks. On questions of credibility, this court is bound by the trier of fact's determinations. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647, 650 (1979). The ledger card establishes that Associates made sixty-nine calls over a nineteen-month period. A debtor, however, who is liable for monthly payments and who consistently fails to make those payments may reasonably expect a creditor to call each month to make further arrangements for the month's payment. The trial court's finding that Associates' four or five calls per month was not reasonably expected to harass is not clearly erroneous.

The Horniks also contend that the manner of the calls are reasonably expected to harass a debtor. As stated above, the manner of calls is not entirely separable from frequency; however, manner by itself may harass. The Horniks contend that Associates should not have raised the Horniks' personal account with Walter in the same telephone calls when it dealt with him on Northern Mattress matters. The trial court rejected Walter's records as less credible evidence of the content of the calls than Associates' records. The trial court's finding that the conversations were not expected to harass is not clearly erroneous.

## OBSCENE LANGUAGE

Section 427.104(1)(i) provides:

[A] debt collector shall not:

. . . .

(i) Use obscene or threatening language in communicating with the customer or a person related to him;

Walter testified that an Associates' employe said to him twice, "God damn it, Walt, what are we going to do about this?" The trial court accepted Walter's testimony but found that the remark was not obscene. The court concluded that the remark, made in the context of a nineteen-month relationship, exhibited personal concern and was a colloquialism. The trial court's finding that Associates did not use obscene language is not clearly erroneous.

## CONTACT WITH WALTER HORNIK'S EMPLOYER

The Horniks also contend that Associates, by contacting Walter's employer, violated sec. 427.104(1)(d) which provides:

[A] debt collector shall not:

. . . .

(d) Initiate . . . communication with a customer's employer . . . but this paragraph does not prohibit a debt collector from communicating with the customer's employer solely to verify employment status or earnings or where an employer has an established debt counseling service or procedure;

Associates contacted Walter's employer twice. The trial court found that there was no evidence that Associates contacted the employer for any reason other than to determine whether Walter had been paid. The statute permits contact for this purpose. We conclude that the trial court's finding is not clearly erroneous.

## DAMAGES

The Horniks contend that they alleged nineteen violations and that their pleadings therefore establish a claim for $19,000 damages in penalty assessments alone. Associates contends that the Horniks are entitled to only one penalty assessment no matter how many violations are alleged. Because the trial court found no violations, it did not decide the questions presented on damages. Although the trial court's reasoning is correct, we reach the question on damages because its disposition is relevant to the issue of frivolousness. Section 427.105(1), Stats., provides:

A person injured by violation of this chapter may recover actual damages and the penalty provided in s. 425.304; but notwithstanding any other law actual damages shall include damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by a violation of this chapter.

The penalty[4] provided in sec. 425.304, Stats., is:

---

[4] The penalty is limited, however, by sec. 425.301(3), Stats., which states:

[T]he greater of:

(1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this subsection shall not be less than $100 nor greater than $1,000; or

(2) The actual damages, including any incidental and consequential damages, sustained by the customer by reason of the violation.

Although the statute permits the penalty for "a violation," the consumer act does not define "violation."

The rules of the Wisconsin Consumer Act are to be construed to coordinate with the regulation of consumer transactions under the Federal Consumer Credit Protection Act. Section 421.102(2)(d), Stats. The remedy provided in sec. 425.304 is a remedy that a consumer may elect in lieu of a remedy under federal law. Section 425.301(4), Stats. In 15 U.S.C.A. § 1692 (West 1982), federal statutes provide substantially similar regulations of debt collection practices as ch. 427 provides. 15 U.S.C.A. § 1692k provides in part:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) In the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

---

Notwithstanding any other section of chs. 421 to 427, a customer shall not be entitled to recover specific penalties provided in s. 425.302(1)(a), 425.303(1), 425.304(1) or 425.305(1) if the person violating chs. 421 to 427 shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

In *Harvey v. United Adjusters*, 509 F. Supp. 1218 (D. Ore. 1981), the court considered a consumer's claim for multiple penalty assessments. The court rejected the consumer's position and allowed a single penalty assessment for the action. To be consistent with federal law, we conclude that sec. 425.304 allows a consumer to collect one penalty assessment up to a maximum of $1,000 in addition to any actual damages in any action where the consumer establishes a violation to which sec. 425.304 is applicable.

## FRIVOLOUS COSTS

We conclude that Associates is not entitled to costs under sec. 814.025(1), Stats. At trial, the Horniks produced evidence that Associates contacted the Horniks more than sixty-nine times, that Associates contacted Walter's employer, and that an Associates' employe said "God damn" to Walter. The Horniks' counterclaim alleging violations of sec. 427.104 is not without basis in fact or law. Section 814.025(1) provides:

> If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

The defendants' answer denied that they were in default and asserted a counterclaim for damages. Associates contends that even if the Horniks' counterclaim was not frivolous, because the Horniks denied that they were in default, the Horniks asserted a frivolous defense.

■ The Horniks contend that sec. 425.307(2), Stats., authorizes a consumer to assert a violation of sec. 427.104 as a defense to a creditor's claim. Section 425.307 provides:

Limitation of action. (1) Any action brought by a customer to enforce rights pursuant to chs. 421 to 427 shall be commenced within one year after the date of the last violation of chs. 421 to 427, 2 years after consummation of the agreement or one year after last payment, whichever is later, except with respect to transactions pursuant to open-end credit plans which shall be commenced within 2 years after the date of the last violation; but no action may be commenced more than 6 years after the date of the last violation.

(2) Rights under chs. 421 to 427 may be asserted as a defense, setoff or counterclaim to an action against the customer without regard to this time limitation.

The unambiguous purpose of sec. 427.307(2) is to permit a consumer to raise possible violations of the consumer that would otherwise be precluded by the limitation of sub. (1) when the consumer is subject to an action by a creditor. We conclude that sec. 425.307 was not intended to change the nature of the consumer's claim. Associates correctly contends that a counterclaim for unliquidated damages is not a defense to their allegation of default. Although sec. 425.307(2) would have permitted the Horniks to raise their claim even if it was otherwise precluded by sec. 425.307(1), we conclude that sec. 425.307(2) does not turn their counterclaim into a defense.

■ A frivolous claim is one that is asserted by an attorney who knows or should have known the position was without a reasonable basis in law or equity and unsupported by any reasonable argument for extension or modifica-

tion of existing law. *Sommer v. Carr*, 99 Wis. 2d 789, 796, 299 N.W.2d 856, 859 (1981). The Horniks' claim for multiple penalty assessments and their assertion of their counterclaim as a defense relied upon interpretation of statutes that had no prior history of judicial interpretation. If the Horniks had prevailed, their $19,000 damage was an amount similar to the $30,144 total contract price and the $14,223.67 finance charge. A determination of frivolousness is a finding of fact. *Id.* Disposition of the Horniks' claims required lengthy consideration by the trial court and serious consideration on appeal. We conclude that the trial court's determination is clearly erroneous.

*By the Court.*—Judgment affirmed in part and reversed in part. Costs to plaintiff-respondent.